Robert L. Herbst (RH 8851)
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
(646) 543-2354
rherbst@herbstlawny.com

Jack Meyerson (JM 8730)
MEYERSON & O'NEILL
1700 Market Street, Suite 3025
Philadelphia, Pennsylvania 19103
(215) 972-1376
jmeyerson@meyersonlawfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| **JUNE BROER**, individually and as Administratrix : | |
| of the Estate of **MARK ANTHONY JOHNSON** : | |
| (deceased), : | |
| : | Docket No.:  14 Civ. 3838 (AKH) |
| : | |
| Plaintiff, : | |
| v. : | AMENDED COMPLAINT |
| : | PLAINTIFF DEMANDS JURY TRIAL |
| **CITY OF NEW YORK,** : | |
| : | |
| **DORA B. SCHRIRO,** : | |
| **STEPHEN WITTENSTEIN,** : | |
| **ASSISTANT DEPUTY WARDEN JOHNSON** : | |
| **#59, OFFICER JOHNSON, JOHN DOES 1-10,** : | |
| **CORIZON HEALTH, INC.,** in their individual : | |
| and official capacities, : | |
| : | |
| Defendants. : | |

-------------------------------------------------------------x

### AMENDED COMPLAINT

June Broer, as Administratrix of the Estate of Mark Anthony Johnson ("the Estate"), by

her attorneys, HERBST LAW PLLC and MEYERSON & O'NEILL, brings this Civil Rights Action under 42 U.S.C. §1983, and wrongful death and survivor action pursuant to New York law against the above-named Defendants, and as her Amended Complaint, avers as follows:

## NATURE OF THE ACTION

1.      Mark Anthony Johnson (decedent) was incarcerated in the City of New York Riker's Island Correctional Institution from approximately November 2012 through the date of his death at age 32 on May 28, 2013. Plaintiff, decedent's mother, brings this civil rights and negligence action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to decedent by provisions of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that Defendants denied decedent, with reckless and/or deliberate indifference, humane, sanitary conditions of confinement and denied access to prompt, adequate and competent medical treatment of his serious medical needs. Plaintiff further alleges that the conduct of Defendant Assistant Deputy Warden Johnson, Defendant Officer Johnson, and the individual John and Jane Doe Defendants and Jail employees was tacitly authorized by Defendants City of New York, Warden and/or Commissioner by their failure to institute and implement lawful and necessary policies and procedures. As a result of the deep-seated policy of refusing adequate medical treatment, decedent endured an agonizing and unnecessary death. Plaintiff alleges state law wrongful death and survivorship claims against all Defendants.

## JURISDICTION

2.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331 and 1343. This Court also has jurisdiction for claims arising under the United States Constitution and to redress the deprivation, under color of state law, of rights, privileges

2

and immunities secured by the Constitution of the United States. *See, e.g.,* 42 U.S.C. §1983; *Howlett v. Rose*, 496 U.S. 356 (1990). The substantive claims in this action arise under 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction under 42 U.S.C. §1367 over the remaining claims which are pendent to the federal claims and are so related that they form part of the entire case/controversy. There is also diversity jurisdiction under 42 U.S.C. §1332 as Plaintiff resides in New Jersey and the amount in controversy exceeds $75,000.00.

     3.     Venue is proper in this Court as one of the Defendants is the City of New York which resides in this District.

## PARTIES

     4.     Mark Anthony Johnson, the decedent, was an adult individual (D.O.B. October 16, 1980) and citizen of the United States and the State of New York. He was a sentenced prisoner at Rikers Island Correctional Facility as of the date of his death at age 32 on May 28, 2013, leaving distributees surviving.

     5.     Plaintiff, June Broer, is decedent's mother and the Administratrix of the Estate, residing at 742 E. 24th Street, Patterson, New Jersey, 07504. Limited letters of administration were issued on or about October 9, 2013. Decedent's father is Leslie Johnson. Decedent had no children.

     6.     At all times herein mentioned, Defendant City of New York was and remains a municipal corporation, duly organized and existing under and by virtue of the law of the State of New York. This corporation, through its Department of Correction, operates detention facilities. Senior officials at each facility, and in its specialized units, promulgate and implement policies,

including those with respect to the reporting, investigation, and access to medical services mandated by law.  Senior officials in the Department of Correction are aware of and tolerate certain practices by subordinate employees in its jails, including those that are inconsistent with formal policy.  These practices (such as the failure to provide sick call on a daily basis and failure to allow inmates access to medical treatment), because they are widespread, long-standing, and deeply embedded in the Department of Correction, constitute unwritten policies/customs.  New York is also responsible for the appointment, training, supervision, and conduct of all Department of Correction personnel, including Defendants referenced herein.

7.      At all times herein mentioned, Defendant Dora B. Schriro (hereinafter Defendant Commissioner), the Commissioner of New York City Department of Correction, was acting under color of state law and is sued in her individual and official capacities.  On information and belief, Defendant Schriro, as Commissioner, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and for the training, supervision and conduct of all DOC personnel, including defendants referenced herein.  She was also responsible for the care, custody, and control of all inmates housed in the Department's jails.  She was daily provided with reports relating to inmate medical care and safety and was responsible for enforcing the rules of the DOC and for ensuring that DOC personnel obeyed the laws of the City and State of New York and of the United States.

8. Defendant Stephen Wittenstein (hereinafter Defendant Warden) at all times pertinent to this action, was the Warden at Otis Bantum Correctional Center where decedent was housed, and as such was responsible for (1) the training and supervision of corrections officers, prison guards, captains, and supervisors; (2) providing safe, adequate and sanitary housing conditions for all inmates housed at OBCF; and (3) for contracting and interacting and supervising

interactions with Defendant Corizon to provide prompt and adequate medical services, care and treatment for all inmates housed at OBCF.  At all times pertinent to this action, he was responsible for the promulgation and enforcement of City of New York Department of Correction rules, regulations, policies, standards and practices formally or by custom regarding the provision of safe, adequate and sanitary housing conditions and prompt, adequate and competent medical services, care and treatment of inmates with serious medical conditions at OBCF, and he was responsible for the employment, training, supervision and conduct of its employees, including the Corizon Defendants, who provided medical services, care and treatment to inmates of OBCF.  At all times material herein, Defendant Warden tacitly authorized the deliberate indifference shown to the serious medical needs of inmates, including Mark Anthony Johnson, and their needs for safe, adequate and sanitary housing conditions. Defendant Warden permitted, allowed, promulgated, and enforced practices and/or policies by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices (such as the failure to provide sick call on a daily basis and failure to provide ill inmates with prompt, adequate medical services, care and treatment), because they are widespread, long-standing, and deeply embedded in the Department of Correction, constitute unwritten policies/customs. He is sued in his individual capacity.

9.      Defendant Assistant Deputy Warden Johnson, his or her first name being unknown, was employed by Defendant City of New York as an officer and/or Assistant Deputy Warden of the New York City Department of Correction.  He/she is sued in his/her individual capacity.

10.     Defendant Officer Johnson, his or her first name being unknown, was employed by Defendant City of New York as a correction officer of the New York City Department of

Correction. He/she is sued in his/her individual capacity.

10 a.  At all times material herein, Defendants Schriro, Johnson, Johnson and the John Doe Defendants were employed by Defendant City of New York and acted under color of law and under color of their authority as officers, agents, servants, and employees of defendant City of New York and its Department of Correction.

11.   At all times herein mentioned, John Doe 1, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York as a member and/or officer of the New York City Department of Correction. He/she is sued in his/her individual capacity.

12.   At all times herein mentioned, John Doe 2, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York as a member and/or officer of the New York City Department of Correction. He/she is sued in his/her individual capacity.

13.   At all times herein mentioned, John Doe 3, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York as a member and/or officer of the New York City Department of Correction. He/she is sued in his/her individual capacity.

14.   At all times herein mentioned, John Doe 4, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York as a member and/or officer of the New York City Department of Correction. He/she is sued in his/her individual capacity.

15.   At all times herein mentioned, John Doe 5, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York as a member and/or officer of the New York City Department of Correction. He/she is sued in his/her individual capacity.

16.   At all times herein mentioned, John Doe 6, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York and/or Defendant Corizon Health, Inc. He/she is sued in his/her individual capacity.

17.    At all times herein mentioned, John Doe 7, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York and/or Defendant Corizon Health, Inc. He/she is sued in his/her individual capacity.

18.    At all times herein mentioned, John Doe 8, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York and/or Defendant Corizon Health, Inc. He/she is sued in his/her individual capacity.

19.    At all times herein mentioned, John Doe 9, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York and/or Defendant Corizon Health, Inc. He/she is sued in his/her individual capacity.

20.    At all times herein mentioned, John Doe 10, a fictitious name, his or her real name being unknown, was employed by Defendant City of New York and/or Defendant Corizon Health, Inc. He/she is sued in his/her individual capacity.

21.    At all times herein mentioned, John Doe Defendants were employed by Defendant City of New York, as an officer or supervisor of the New York City Department of Correction, or of Corizon Health Inc., and were acting under color of state law.

22.    The information necessary to identify Defendant John Does 1 through 10is presently within the sole and exclusive custody of Defendants herein. All of these John Doe Defendants were acting within the scope of their employment by the City of New York and/or Defendant Corizon Health, Inc. at all times pertinent to this action.

23.    Defendant Corizon Health, Inc. (hereinafter "Corizon") is a Delaware corporation headquartered at 105 Westpark Drive, Brentwood, Tennessee 37027. Defendant Corizon is licensed to conduct business and does conduct business in New York, and has a contract with the City of New York to provide medical care and healthcare programs to inmates at Rikers Island

and other correctional facilities. This contract was in effect at the times relevant to this action. Defendant Corizon was acting under color of law at the time of the incident giving rise to this action. Defendant Corizon employed the various John Doe Defendants, some of whom may have held supervisory roles.

## HEALTH CARE MINIMUM STANDARDS

24.    Prior to the time of this incident, the New York City Board of Correction propounded certain Health Care Minimum Standards and Mental Health Minimum Standards, which were in effect at the time of this incident.

25.    Defendants were required to adhere to the aforesaid standards, including with respect to the care and supervision provided to decedent in May 2013.

26.    The stated purpose of the Health Care Minimum Standards was and is "to insure that the quality of health care services provided to inmates in New York City correctional facilities is maintained at a level consistent with legal requirements, accepted professional standards and sound professional judgment and practice." *See* Health Care Minimum Standards §3-01(a)(1).

27.    In accordance with the Health Care Minimum Standards, the "Department of Correction…shall be responsible for the design and implementation of written policies and procedures which ensure that all inmates have prompt and adequate access to all health care services." *See* Health Care Minimum Standards §3-02(1).

28.    At all relevant times, the Health Care Minimum Standards required that "[e]very facility must inform all inmates of their right to health care and the procedures for obtaining medical attention." *See* Health Care Minimum Standards §3-0(2)(b)(1).

29.    At all relevant times, the Health Care Minimum Standards required that

"Correctional personnel shall never prohibit, delay, or cause to prohibit or delay an inmate's access to care or appropriate treatment." *See* Health Care Minimum Standards §3-0(2)(b)(4).

30.     At all relevant times, the Health Care Minimum Standards required that "[a]ll decisions regarding the need for medical attention shall be made by health care personnel." *See* Health Care Minimum Standards §3-0(2)(b)(4).

31.     At all relevant times, the Health Care Minimum Standards required that "[a]ny correctional personnel who knows or has reason to believe that an inmate may be in need of health services shall promptly notify the medical staff and a uniformed supervisor." *See* Health Care Minimum Standards §3-0(2)(b)(6).

32.     At all relevant times, the Health Care Minimum Standards required that "[a]ll inmate requests for emergency medical...attention shall be responded to promptly by medical personnel" including a "face to face encounter between the inmate requesting medical attention and appropriate health care personnel." *See* Health Care Minimum Standards §3-0(2)(d)(1).

33.     At all relevant times, the Health Care Minimum Standards required that all "correctional personnel must be familiar with the procedures for obtaining emergency medical or dental care, with the names and telephone numbers of people to be notified and/or contacted readily accessible." *See* Health Care Minimum Standards §3-0(2)(d)(1).

34.     At all relevant times, the Health Care Minimum Standards required that"[c]orrectional personnel who know or have reason to know an inmate is in need of emergency health services shall make the appropriate notifications," including but not limited to, by notifying medical personnel. *See* Health Care Minimum Standards §3-0(2)(d)(2).

35.     At all relevant times, the Health Care Minimum Standards required that "Hospital based care shall be provided for inmates in need of hospital care...." *See* Health Care Minimum

Standards §3-0(2)(i)(1).

36.     Defendants breached each of these regulations, and other applicable portions of the Health Care Minimum Standards, Mental Health Minimum Standards, and rules, regulations, policies, and/or procedures of the Department of Correction in connection with their supervision of and interaction with decedent.

37.     Defendants were not authorized to "prohibit, delay, or cause to prohibit or delay" the decedent's "access to care or appropriate treatment." *See* Health Care Minimum Standards §3-0(2)(b)(4).

38.     Defendants did prohibit, delay, and cause to prohibit or delay decedent's access to care or appropriate treatment.

39.     At the various times that decedent (and inmates on his behalf) requested the Defendants to obtain medical treatment for him, they were required to promptly notify the medical staff, but failed to do so. *See* Health Care Minimum Standards, §3-0(2)(b)(6).

40.     Each of the Defendants were authorized and able to call the infirmary or medical personnel of their own accord, to escort decedent to the clinic, and/or otherwise initiate involvement by medical personnel, and failed to do so until it was too late.

41.     On a daily basis at Otis Bantum Correctional Center and elsewhere at Rikers Island, inmates request medical attention from their cells and must rely upon correction officers, such as Defendants Officer Johnson and Assistant Deputy Warden Johnson and the aforementioned John Doe Defendants to contact medical personnel on their behalf.

42.     These Defendants do not have specialized medical knowledge or training and improperly denied medical treatment and/or did not notify medical staff.

43.     As of May 2013, Defendant City of New York had a policy of failing to ensure

and did fail to ensure that John Doe Defendants and both Defendants Johnson promptly reported and requested medical assistance for inmates requesting medical care.

44.     This failure to ensure that inmates in need of or requesting medical care received and had access to same was a widespread and deep-seated practice such that it constituted a policy that all Defendants were aware of and tacitly enforced and endorsed.

## FACTS

45.     On August 14, 2013, Plaintiff duly and timely served upon the City of New York, in writing, a Notice of Claim.

46.     On January 24, 2014, Defendant City of New York held a hearing under General Municipal Law 50-h.

47.     Prior to the commencement of this action, more than thirty (30) days elapsed since the service of said notice of Claim upon Defendant City of New York, and its Comptroller failed, neglected, and refused to pay, settle, compromise or adjust the claims of Plaintiff herein.

48.     The claims set forth herein are timely.

49.     On and prior to May 28, 2013, decedent was detained at the Rikers Island Correctional Facility (Otis Bantum Correctional Center) and was in the custody and control of the New York City Department of Correction and Defendant Corizon.

50.     During the month of May 2013, the decedent was housed in the mental observation unit at the Rikers Island Correctional Facility, used exclusively to house mentally ill inmates.

51.     At and prior to that time, Defendants failed to monitor and/or properly monitor decedent's mental and physical condition, in violation of good and accepted standards and practices for same.

52.     During his period of incarceration in November through May 2013, Defendants failed to provide decedent with medical attention, proper medication, and/or failed to properly monitor his mental condition in response to such medication, in violation of good and accepted standards and practices for same and with deliberate indifference pursuant to the tacit policy, promulgated and enforced by Defendants of ignoring inmates' health-related complaints and requests.

53.     Pursuant to the tacit policy of ignoring and disregarding the medical needs of inmates, and as a result of deliberate indifference to decedent's condition and the wanton failure of Defendants to perform their duty to promulgate and enforce policies and procedures ensuring that inmates received prompt, adequate and appropriate medical care, decedent was not given adequate medical care, which caused his illness and death.

54.     On or about May 23, 2013, decedent stopped eating and was ingesting insufficient liquids.

55.     On or about May 23, 2013 through the date of his death, decedent began experiencing the signs of a serious, life threatening infection, including but not limited to abdominal pains, diarrhea, and bloody stools, and/or internal bleeding.

56.     Beginning on or about May 23, 2013, decedent asked John Doe Defendants 1-10, and/or Defendants Assistant Deputy Warden Johnson and Officer Johnson for medical treatment and/or assistance.

57.     Pursuant to Defendants' tacit policy of depriving inmates of adequate medical treatment and ignoring and/or disregarding requests for and evidence of need for medical treatment, Defendants repeatedly denied medical treatment and refused to provide decedent with any medical treatment or assistance from May 23, 2013 through May 27, 2013.

58.     Had decedent received prompt and adequate medical attention, decedent would not have died and would have had an increased chance of survivability.

59.     For instance, on May 23, 2013, decedent attempted to obtain a "sick call" visit with medical providers and spoke to Defendant Johnson, who told him that the clinic officer said he "was not on the list" to see a medical professional, and Defendant Johnson did not take any steps to make sure that decedent obtained medical attention.

60.     Decedent expressed that he was very ill and needed medical attention, but Defendants told him he would have to wait to sign the sick call sheet for the following day, May 24th.

61.     However, sick call did not take place on May 24, 2013 and decedent was therefore not permitted to see a medical professional or obtain treatment.

62.     Failure to conduct a "sick call" daily and/or to ensure that one was conducted on a daily basis and/or to ensure that inmates were given 24 hour and/or sufficient access to medical care was a policy and/or practice of Defendants City of New York, Commissioner, and Warden.

63.     On May 24 and 25, 2013, decedent's condition worsened, to such a degree that a fellow inmate, Baptista, advised Assistant Deputy Warden Johnson, who was making a tour, that decedent was sick and in need of medical attention.

64.     Defendant Assistant Deputy Warden Johnson took no steps or action to procure medical attention for decedent and failed to even investigate whether decedent required same.

65.     It was apparent to inmate Baptista, and anyone else who bothered to observe decedent, including Defendants, that decedent was too ill to eat, that his skin was grayish pale in color, and that his condition was severe.

66.     On May 26, 2013, inmate Baptista and other inmates renewed their pleas to

13

Defendants to provide decedent with medical attention.

67.     Defendants failed to respond to these requests for medical attention made by decedent and/or on his behalf.

68.     On May 27, 2013, Defendants again failed to provide prompt and adequate medical treatment and access to same, and there was no sick call for which decedent could seek and obtain medical treatment.

69.     On May 27, 2013, decedent's sheets were soaked with blood, as a result of the internal bleeding he was experiencing.

70.     Inmate Baptista and other inmates protested this lack of medical attention and advised Defendants that they would not leave their cells for mealtime until decedent's medical needs were met.

71.     Defendants did not monitor or adequately observe decedent, which would have revealed that he was not consuming adequate amounts of food or hydrating liquids, that he was unable to leave his bed, and was visibly ill and bleeding for a period of days preceding his death.

72.     Defendants also ignored and disregarded direct and repeated complaints and requests for medical treatment by decedent and other inmates on his behalf, including, but not limited to, Batista, each day from May 23 through May 27, 2013.

73.     Defendants knew or should have known that inmates in the mental observation unit may have a greater propensity to require medical attention and/or to be unable as readily to express the need for medical attention, than members of the inmate population at large.

74.     Defendants failed promptly to provide and obtain adequate medical services, care and treatment for decedent beginning on May 23, 2013 through the date of his death.

75.     In the days preceding his death, Defendants knew or should have known that

14

decedent would die or suffer severe injury in the absence of medical attention, in light of decedent's obviously deteriorating state of health.

76.     Defendants observed and/or were aware of decedent's obvious signs of physical injury and distress, including gray skin pallor, bloody stools, spitting blood, and/or abdominal pain, beginning on or about May 23, 2013, through the date of decedent's death and were deliberately indifferent to decedent's need for prompt and adequate medical services, care and treatment to avoid suffering, injury and death.

77.     Defendants, including Defendant City of New York, and its agents, servants, and/or employees, knew or should have known that decedent required medical attention as early as May 23, 2013, and that absent such attention, he faced a substantial likelihood of suffering, injury or death.

78.     Defendants denied medical attention to decedent, pursuant to their tacit policy of failing to provide prompt and adequate medical services, care and treatment to inmates and of ignoring or failing to address inmates' requests for needed medical services, care and treatment.

79.     Decedent, individually and through others acting on his behalf, reported his symptoms and illness to Defendants and promptly requested medical services, care and treatment beginning on or about May 23, 2013 through May 27, 2013, but these concerns were ignored, not reported, and not addressed.

80.     As a result of the foregoing, decedent MARK ANTHONY JOHNSON was caused to suffer a wrongful death while under the care, custody, and control of Defendants.

81.     According to the progress notes of Nurse Valerie Innis, on the morning of May 27, 2013, she responded to decedent's cell at Rikers Island for a:

> medical emergency with Dr. Botros- pt. [decedent] 'can't move.' Found pt. A& O x3 lying in his bed on his right side. C/O SOB that his chest and stomach were

15

hurting him. Pt. brought to clinic via stretcher- pt. stated that he had not eaten in four (4) days; and that he felt dehydrated from only drinking Koolaide. Vital signs (BP 124/102, Pulse 166, Resp. 24, Temp. 97.0) and EKG done. EMS was activated at 10:55 a.m., arrived 11:08 a.m. and departed 11:34 a.m. Pt. was alert and responsive when he left clinic.

82.     Dr. Amgad Botros' notes also indicated that decedent appeared to be in distress, was experiencing chest pain, shortness of breath for a few hours, abdominal tenderness, "and abdominal pain with black stools for 3-4 days."

83.     The presence of black stools demonstrates that decedent was experiencing internal bleeding in the upper abdominal area for a substantial period of time, as blood will become black in color over time after it passes through the digestive system and is processed within the stomach and small intestine.

84.     Due to the severity of and discomfort associated with this medical condition, decedent made numerous requests for medical treatment to Defendants in the several days leading up to May 27, 2013.

85.     According to Dr. Botros' May 27, 2013 assessment, decedent was suffering from "unspecified tachycardia," shortness of breath, dehydration, and was ordered to be transferred to the hospital for a "possible gastro-intestinal bleed."

86.     Beginning on or about May 23, 2013 through May 28, 2013, decedent endured conscious pain and suffering and a conscious contemplation of death while incarcerated, during transport to the hospital, and at the hospital.

87.     Upon arrival at Elmhurst Hospital around 12:30 p.m. on May 27, 2013, Triage noted the following:

> Referred from Rikers Island for black stool, abdominal pain shortness of breath for 4 days. Patient presents with complaints of bloody stools. Symptoms began 4 day(s) ago. The symptoms are constant. There has/have been 4 episode(s) per day. Patient reports pain associated with symptoms as 10/10.

16

88.    Decedent's chart further stated that the abdominal pain was originally located in his left lower quadrant, but gradually became centralized.

89.    Decedent had suffered internal bleeding for an extended period of time as demonstrated through the presence of bloody stools.

90.    Emergency surgery was performed and decedent was diagnosed with acute, purulent peritonitis.

91.    The operative report noted that an entire liter of pus was recovered from decedent's abdominal cavity, and that the bowel was ischemic.

92.    As a result of edema, the surgeon was unable to complete closure of the incision, and part of decedent's small bowel remained exposed after the operation and was covered only by a plastic sheet.

93.    The mortality summary noted that decedent's wound culture was positive for "group A strep," that he remained in septic shock in the SICU, and that he went into cardiac arrest and expired at approximately 11:00 p.m. on May 28, 2013.

94.    Autopsy report by Dr. Sean Kelly, M.D., indicated that the cause of death was "septic complications of acute bacterial peritonitis due to necrosis of stomach and small bowel of unknown etiology."   Final diagnoses also included, but were not limited to, acute bacterial peritonitis, organ failure, and inflammation of various organs.

95.    Other incidents of inadequate medical treatment given to inmates by City of New York at Rikers Island, and which exemplify the policy of neglect and failure to provide adequate medical treatment and to disregard requests or observable need for medical treatment, include, without limitation, the following:

(a)    In June 2012, inmate John William Kammin repeatedly requested and was refused

17

his much needed medication, to include Xanax, the denial of which caused him to sustain a seizure which in turn caused a skull fracture and other injuries. *See Kammin v. City of New York, et al*, 13-cv-3873;

(b)     On August 18, 2012, inmate Jason Echevarria ingested a toxic "soap ball," became extremely ill, displayed obvious signs of extreme illness, requested but was denied medical treatment, and died. *See Echevarria v. City of New York, et al*, 13-cv-04921;

(c)     On February 15, 2014, Jerome Murdough, a mentally ill inmate, was housed in a cell that exceeded 100 degrees and was denied proper medical treatment and adequate housing, resulting in his death that date. *See Murdough v. City of New York, et al*.

96.     For the duration of his incarceration, and despite Defendants' knowledge of prior inadequacies in inmate medical care and deaths attributable thereto at Rikers Island, proper policies and procedures were not put in place and followed to provide prompt and adequate medical services, care and treatment; rather, an improper policy of failing to provide prompt and adequate medical services, care and treatment, and access to such medical services, care and treatment, was followed.

97.     The conditions at Rikers Island in 2013 were unsanitary and unhealthy, and grossly inadequate under the law.

98.     Decedent's illness and serious medical condition was so obvious that a layperson would recognize the need for the prompt medical attention which was denied him from at least May 23, 2013 through May 27, 2013.

99.     Defendants were deliberately indifferent to decedent's requests, and the repeated requests made by others on his behalf for medical attention, services, care and treatment, which

Defendants repeatedly ignored, directly caused an increased risk of harm and a painful, agonizing, and unnecessary death at the age of 32.

100.    Decedent was incarcerated under conditions posing a substantial risk of serious harm and Defendants acted with gross negligence and deliberate indifference to his health and safety despite their knowledge of his apparent and reported medical condition.

101.    These constitutional violations were the direct and proximate result of the failures of Defendants to institute proper policies and procedures necessary to ensure that inmates, including mental health inmates, are provided with proper medical services, care and treatment, and to properly supervise other employees.

102.    Defendants were deliberately indifferent to decedent's serious medical condition.

103.    Ultimately, as a result of the acts and omissions set forth in this Amended Complaint, decedent's condition worsened such that he was rushed to Elmhurst Hospital, where he died the next day.

104.    Defendant developed severe illness, infection, and peritonitis as a direct result of Defendants' failure to treat his medical conditions in the week preceding his death.

105.    The aforementioned failures were the result of deliberate and conscious indifference on the part of all Defendants.  Furthermore, this indifference was tacitly authorized by Defendants City of New York, Warden, and Commissioner for their repeated failures to correct known defects in the policies and procedures involving medical treatment, given the history of mismanaged inmate healthcare at Rikers Island and the Department of Correction.

106.    Defendants' actions were reckless, wilful, and wanton, as demonstrated through their direct knowledge of decedent's serious, life threatening medical condition days before his hospital admission, and in light of prior incidents at Rikers Island relative to inadequate medical

treatment, and in light of the policy of Defendants' City of New York, Warden and Commissioner to deprive inmates of access to adequate medical services, care and treatment.

107.    Punitive damages are appropriate due to Defendants' denial of care and treatment, despite the obvious and urgent need for same and the knowledge of Defendants John Does and Defendants Johnson of decedent's condition in the days preceding his untimely death.

## CAUSES OF ACTION

### COUNT I
### ALL DEFENDANTS
### VIOLATION OF 42 U.S.C. § 1983 AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### *-FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT AND SANITARY CONDITIONS OF CONFINEMENT-*

108.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

109.    Defendants, at all times pertinent to this action, acted under color of law and/or pursuant to policies, customs, practices, rules, regulations, ordinances, statutes, and/or usages of City of New York.

110.    Defendants, with knowledge of decedent's medical complaints and condition and/or with deliberate indifference to such medical complaints and condition, had a duty under the Eighth and Fourteenth Amendments to the United States Constitution promptly to provide needed and adequate medical care to him in conformity with the standards for delivery of such medical services, care amd treatment in the City and State of New York.

111.    Defendants, with knowledge of decedent's physical and medical condition, and/or with deliberate indifference to such physical and medical condition, acted and failed to act in such a way as to deprive him of necessary and adequate medical services, care and treatment, thus endangering, and ultimately depriving him of, his health, his well-being and his life.

112.   These acts and omissions of deprivation include, but are not limited to, failing to monitor and observe decedent's physical and mental condition; failing to observe obvious and readily apparent signs and symptoms of decedent's physical illness, injury, pain, distress, and serious and deteriorating medical condition; ignoring and failing to respond to decedent's complaints and those of other inmates on his behalf that he was suffering from signs and symptoms of serious illness, including but not limited to severe pain, tarry/bloody stools, inability to eat or drink, and bloody bedsheets; failing promptly to provide decedent with necessary, sufficient and proper medical and/or mental health care and treatment; failing and refusing to provide timely care, consultation and continued  treatment with an appropriate provider; and delaying providing treatment as decedent's infection, injury, pain, distress and physical condition worsened.

113.   Defendants, knowing of the medical complaints and conditions of decedent, and knowing of the inadequacies and deficiencies in the medical facilities, staffing, and procedures at Rikers Island, had a duty under the Eighth and Fourteenth Amendments to establish and implement policies, practices, and procedures designed to ensure that decedent received medical services, care and treatment promptly in conformity with the standards for delivery of such medical care and treatment in the State of New York.  Defendants failed to implement the following:

  (a)  policies and procedures to ensure inmates receive the proper medications and treatment;

  (b)  policies and procedures to implement proper medical precautions when an inmate failed to receive necessary medical treatment;

  (c)  policies and procedures to ensure inmates' serious medical complaints and issues

21

are promptly addressed by correction officers, supervisors, officials and medical staff;

(d)  policies and procedures for responding to observations by correction officers, supervisors, inmates and other persons of an inmate experiencing a serious medical condition;

(e) policies and procedures to ensure that inmates' serious medical complaints are promptly addressed upon receipt of notice of the complaint and/or their presentation to the infirmary;

(f) policies and procedures to ensure inmates are promptly transported to the emergency room or hospital when medically necessary;

(g) policies and procedures to ensure that correction officers properly respond to inmates' requests for medical attention or inmates' displays of signs of illness; and

(h) policies and procedures to prevent and recognize signs of illness/sepsis/infection in a prompt manner.

114.    Defendants, including Defendants Warden and Commissioner, knowing of the medical complaints and condition of decedent, and/or with deliberate indifference to the inadequacies and deficiencies in the medical facilities, staffing and procedures at Rikers Island, failed and neglected to establish and implement policies, practices and procedures designed to assure that decedent received adequate medical treatment and care, and/or have adopted policies, practices and procedures which Defendants knew or reasonably should have known, would be ineffective in delivering medical treatment and care at such standards, thus endangering decedent's health and well-being and causing his death in violation of rights secured to him by

22

the Eighth and Fourteenth Amendments in the United States Constitution.

115.    Defendants, knowing of and/or with deliberate disregard to the medical complaints and condition of decedent breached their duty under the Eighth and Fourteenth Amendments of the United States Constitution to instruct, supervise and train their employees and agents to ensure the delivery of medical care to decedent was consistent with the standards of medical care in the State of New York.

116.    Defendants' above-mentioned actions and/or omissions were outrageous, reckless and/or intentional and are shocking to the conscience of civilized persons and intolerable in a society governed by laws and considerations of due process.

117.    As a direct and proximate result of the aforementioned intentional, reckless, and grossly negligent actions and/or omissions of Defendants, decedent suffered significant conscious pain, suffering, discomfort, injuries, infection, and death.

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from decedent's injuries and death, including without limitation, his pecuniary injury, together with all medical expenses, as well as compensatory damages, pain and suffering, punitive damages, exemplary damages, attorneys' fees, interest and costs, and all such other relief as the Court deems just.

**COUNT II**

**ALL DEFENDANTS**
**VIOLATION OF 42 U.S.C. § 1983 AND THE EIGHTH AND**
**FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**
*-FAILURE TO TRAIN/SUPERVISE-*

118.    Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

119.    Defendant City of New York, Defendant Commissioner, Defendant Warden, Defendant Assistant Deputy Warden Johnson, Defendant John and Jane Doe supervisors, and

Defendant Corizon were aware or should have been aware, that the Defendants were failing to provide prompt and adequate medical services, care and treatment to decedent and other inmates at Rikers Island, and failing to ensure that proper procedures were in place to bring inmates' medical needs to the attention of medical providers.

120.    Defendants were aware or should have been aware, that this policy/practice of failing to provide medical treatment and/or access to same created an unreasonable risk of serious injury and/or death to inmates and/or decedent.

121.    Defendants were aware or should have been aware of the unreasonable risk to decedent and were indifferent to that risk.

122.    Defendants failed adequately to train and supervise their employees to adhere to the Health Care Minimum Standards and to ensure that requests for medical services, care and treatment were promptly and properly addressed and met.

123.    Decedent's injuries were the direct result of the policy/practice and failure to supervise and/or train.

124.    Plaintiffs are entitled to punitive damages as Defendants' actions were wilful and wanton, as demonstrated through their knowledge of decedent's mental health and physical life threatening medical condition, his obvious signs of distress, pain, and infection, and in light of prior incidents at Rikers Island relative to inadequate medical treatment.

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from decedent's injuries and death including without limitation, decedent's pecuniary injury, together with all medical expenses, as well as compensatory damages, pain and suffering, punitive damages, exemplary damages, attorneys' fees, interest and costs, and all such other relief as the Court deems just.

## COUNT III

### ALL DEFENDANTS
### STATE LAW CLAIM
### *-WRONGFUL DEATH-*

125.    Plaintiff incorporates all of the above paragraphs as though set forth herein.

126.    June Broer, as Administratrix of the Estate, brings this wrongful death claim.

127.    By reason of the foregoing, the statutory distributees of decedent's estate, June Broer and Leslie Johnson, sustained pecuniary and non-economic loss resulting from the loss of decedent's love, comfort, society, attention, services, income, support, and life.

128.    Defendants are liable to Plaintiff for the wrongful death of decedent.

129.    As a result of the foregoing acts of negligence, gross negligence, and wilful misconduct by Defendants, decedent died on May 28, 2013, leaving as his sole survivors and distributees his biological parents.

130.    Defendants Corizon and John Does 6-10, including any Corizon supervisors, were reckless and grossly negligent in failing to ensure that the inmates they were entrusted to and contracted to care for were provided access to the medical treatment they needed and that systems were in place to ensure that Defendant Corizon and its employees were notified if an inmate required or sought medical care.

131.    As a result of the incidents set forth in this Amended Complaint, decedent's estate and distributees have been severely and permanently damaged, incurred expenses for decedent's medical care and his funeral, and his parents were deprived of the love, nurturing, support, services, future earnings, guidance of the decedent and estate accumulations, all to their damage, and they therefore seek an award of money damages, together with the costs and disbursements of this action.

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from decedent's injuries and death, including but not limited to, damages for the deprivation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased, loss of contributions for support, loss of services, companionship, care and protection, medical expenses, reasonable funeral expenses, pain and suffering and mental anguish resulting from decedent's death to the next-of-kin, punitive damages, and any other relief the Court deems appropriate.

### COUNT IV

### ALL DEFENDANTS
### STATE LAW CLAIM
### *-LOSS OF SERVICES AND ESTATE ACCUMULATION-*

132.    Plaintiff incorporates all of the above paragraphs as though set forth herein.

133.    Plaintiff and decedent's father were entitled to the love, society, services, nurturing, economic support and companionship and estate accumulation of their son, MARK ANTHONY JOHNSON.

134.    As a result of the actions, inactions, and misconduct on the part of the defendants, decedent's parents were deprived of the love, society, nurturing, economic support and companionship and estate accumulation of their son.

135.    As a result of the foregoing, Plaintiff and Leslie Johnson have been damaged and ask for an award of money damages, together with the costs and disbursements of this action.

### COUNT V

### ALL DEFENDANTS
### *-SURVIVOR ACTION-*

136.    Plaintiff incorporates all of the above paragraphs as though set forth herein.

137.    June Broer, as Administratrix of the Estate, brings this survivor action claim, pursuant to NY CLS EPTL 11-3.2, et seq, on behalf of the decedent's estate.

138.    Defendants are liable to the decedent for the pain and suffering he endured and his conscious contemplation of death during the month of May 2013.

139.    As a result of the foregoing acts of negligence, gross negligence, and wilful misconduct by Defendants, decedent died on May 28, 2013, succumbing to his wounds after an extensive and painful surgery.

140.    Defendants Corizon and John Does 1-5, including any Corizon supervisors, were reckless and grossly negligent in failing to ensure that the inmates they were entrusted to care for were provided access to the medical treatment they needed and for failing to implement a procedure to ensure that medical requests by inmates were passed along to Corizon and its agents and employees.

WHEREFORE, Plaintiff demands judgment against Defendants for reasonable funeral expenses, pain and suffering and mental anguish, including a conscious contemplation of death, and any other relief the Court deems appropriate.

## COUNT VI

### ALL DEFENDANTS
### *-NEGLIGENCE/GROSS NEGLIGENCE-*

141.    Plaintiff incorporates all of the above paragraphs as though set forth herein.

142.    Defendants owed decedent a duty of care while he was in their care, custody, and control.

143.    For the reasons set forth above, including failing to provide medical treatment days before May 27, 2013, Defendants breached their duty of care to decedent.

144.    These failures directly and proximately caused decedent to sustain physical

27

injury, pain and suffering, emotional distress, and ultimately his death.

145. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of decedent's rights.

146. Defendant City of New York, as employer of each of the individual John and Jane Doe Defendants and Defendants Johnson, is responsible for their aforementioned actions and/or wrongdoing under the principles of *respondeat superior.*

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from decedent's injuries and death, including without limitation, mental anguish and pain and suffering, lost wages, punitive damages, and any other relief the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues raised in this Amended Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(1) An award for non-economic damages, economic damages, attorneys' fees, interest, and punitive damages to Plaintiff and survivors in an amount to be determined;

(2) reimbursement for medical expenses, including any costs for surgery;

(3) punitive damages for Defendants' wilful and wanton conduct and conscious indifference to the known consequences of their actions and reckless disregard of decedent's safety and health;

(4) lost wages for decedent's inability to continue to work;

(5) funeral expenses;

(6) damages for loss of support and services;

(7) damages for mental anguish and pain and suffering of decedent and his next-of-

kin;

(8)    deprivation of the expectation of pecuniary benefits that would have resulted from

the continued life of decedent; and

(9)    any such further and additional relief as this Court deems appropriate.


DATED:    New York, New York
            July 10, 2014

                      Respectfully submitted,

                      HERBST LAW PLLC

                      /s/ Robert Herbst
                      420 Lexington Avenue, Suite 300
                      New York, New York 10170
                      rherbst@herbstlawny.com
                      (646) 543-2354


                      MEYERSON & O'NEILL

                      1700 Market Street, Suite 3025
                      Philadelphia, Pennsylvania 19103
                      jmeyerson@meyersonlawfirm.com
                      (215) 972-1376